NOT FOR PUBLICATION (Doc. Nos. 14)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

**OPINION**

| | | |
|---|---|---|
| In Re: CAMDEN POLICE CASES | : | Civil No. 11-1315 (RBK/JS) |
| | : | |
| DERRICK BROWN, | : | |
| Plaintiff, | : | |
| v. | : | |
| CITY OF CAMDEN; CITY OF CAMDEN POLICE DEPARTMENT; CAMDEN COUNTY; CAMDEN COUNTY PROSECUTOR'S OFFICE; STATE OF NEW JERSEY OFFICE OF THE ATTORNEY GENERAL; KEVIN PARRY, JASON STETSER, ROBERT BAYARD, ANTONIO FIGUEROA, DAN MORRIS, DOES 1-10, in their individual and in their official capacities as police officers, | : | Civil No. 10-4757 (RBK/JS) |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This case is one of the many cases before the Court stemming from the alleged misconduct of five Camden City police officers. Plaintiff Derrick Brown alleges that Officers Robert Bayard, Antonio Figueroa, Kevin Parry, Jason Stetser, and Daniel Morris (the "Police Officers") searched and arrested him without probable cause and stole money from him. Plaintiff asserts various claims under 42 U.S.C. § 1983 for violation of his constitutional rights as well as state-law tort claims. Currently before the Court is the motion by the Camden County

1

Prosecutor's Office (the "CCPO") to dismiss all claims against it. (Doc. No. 14). Because the CCPO is entitled to sovereign immunity under the Eleventh Amendment, the Court grants its motion to dismiss.

## I. BACKGROUND[1]

On September 17, 2008, Plaintiff was sitting outside of a friend's home in Camden, New Jersey. Plaintiff claims that Defendants Figuero and Bayard arrived at the house, arrested him without probable cause, and transported him in a police vehicle to his residence. Defendants Stetser and Parry were waiting at Plaintiff's residence when Defendants Figuero and Bayard arrived with Plaintiff. According to Plaintiff, the Police Officers thoroughly searched Plaintiff's residence without a search warrant and stole $11,000 in cash from a box that Plaintiff kept within his home.

The Police Officers then transported Plaintiff to the Camden City Police Department and charged him with possession of a controlled dangerous substance (cocaine and heroin), possession with intent to distribute, possession with intent to distribute within 1000 feet of a school, possession of a rifle without a license, and possession of a firearm by a convicted felon. According to Plaintiff, the Police Officers falsified the criminal complaint against him. Specifically, Plaintiff alleges that the Police Officers falsely attested that they witnessed Plaintiff trade a controlled substance for money and that after they searched Plaintiff's residence, they discovered "in plain view" approximately $2,000 in cash, a rifle, and several packages of cocaine and heroin. (Compl. ¶¶ 7-8).

Because Plaintiff could not afford bail, he was detained pending trial. The Police Officers allegedly gave false testimony before a grand jury, which indicted Plaintiff. Plaintiff

---

[1] The facts regarding Plaintiff's arrest and detention are taken from Plaintiff's Complaint and assumed true for purposes of this motion. (Doc. No. 1).

remained in custody awaiting trial until November 2009, when he was released and all charges were eventually dropped pursuant to an application by the CCPO.

Plaintiff filed the Complaint in September 2010. He asserts the following claims: (1) "false arrest/imprisonment" under § 1983; (2) "malicious prosecution" under § 1983; (3) "malicious abuse of process" under § 1983; (4) "conspiracy to violate civil rights" under 42 U.S.C. § 1985; (5) a "Monell" claim under § 1983; (6) "common law negligence" based on "failure to train, supervise, discipline, or assign law enforcement officers;" (7) "common law false arrest and imprisonment;" (8) "common law malicious prosecution;" (9) "common law malicious abuse of process;" (10) "common law intention [sic] infliction of emotional distress;" (11) "common law negligent infliction of emotional distress;" and (12) "common law theft and conversion."

Plaintiff does not sue the Camden County Prosecutor in his individual capacity. Regarding the CCPO, Plaintiff alleges:

> The Camden County Prosecutor's Office is responsible for the detection, arrest, indictment, and conviction of offenders against the laws of the State of New Jersey and at times relevant to this cause of action, it supervised, controlled, managed and/or was responsible for the action of the Camden City Police Department and that entities' [sic] employees/police officers . . . . Defendant Camden County Prosecutor's Office therefore is responsible for the actions of each of the other defendants named in this complaint, under the doctrines of common law agency and respondeat superior. The actions of each of the other defendants named in this complaint therefore are imputed to defendant Camden County Prosecutor's Office.

(Compl. ¶ 5). Plaintiff further alleges that the CCPO was "aware of condoned, encouraged, and failed to deter or stop, the . . . pattern, history, and custom of the [Police Officers] violating the civil rights of individuals within the boundaries of the City of Camden." (Compl., Count 5, ¶ 2). According to Plaintiff, the CCPO was on "actual notice of the need to train, supervise, discipline

3

or terminate" the Police Officers prior to Plaintiff's false arrest, but the CCPO "intentionally, recklessly, and/or negligently, as a matter of policy and practice, failed to properly supervise, discipline, train, or otherwise sanction" the Police Officers. (Id. ¶¶ 3, 6).

The CCPO now moves to dismiss Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[2] The CCPO argues that Plaintiff's § 1983 claims and state-law tort claims should be dismissed because the CCPO is entitled to sovereign immunity under the Eleventh Amendment. The CCPO also argues that Plaintiff's § 1983 claims should be dismissed because the CCPO is not a "person" under § 1983, and because the doctrine of absolute prosecutorial immunity bars Plaintiff's claims. The CCPO further argues that the Complaint fails to state a claim against it under § 1983.

Plaintiff opposes the CCPO's motion to dismiss. Plaintiff argues that the CCPO is not entitled to sovereign immunity because the Eleventh Amendment applies to only state officials and the CCPO was acting on behalf of Camden County when it failed to properly train and supervise the Police Officers. Plaintiff also argues that his § 1983 claim should not be dismissed because local government officials can be sued in their official capacities under § 1983. Regarding the doctrine of prosecutorial immunity, Plaintiff argues that the CCPO is not immune

---

[2] There are approximately forty-eight separate cases pending before the Court related to the Police Officer's misconduct. In March 2011, the Court consolidated the cases for purposes of discovery and case management, and created a master docket (11-CV-1315). (See Doc. No. 1 in 11-CV-1315). To date, the CCPO has moved to dismiss approximately forty-two of the complaints against it. The parties have not followed an orderly process in briefing the CCPO's motions to dismiss in those cases. Prior to consolidation, the CCPO filed its motions to dismiss on a case-by-case basis. The CCPO moved to dismiss in this case in January 2011 by filing its moving papers on the individual docket for this case (10-CV-4757). (See Doc. No. 14 in 10-CV-4757). Plaintiff opposed the CCPO's motion by filing an opposition brief on behalf of himself and thirteen other plaintiffs who faced motions to dismiss by the CCPO. (See Doc. No. 2 in 11-CV-1315). The CCPO filed its reply brief in this matter on the individual docket. (See Doc. No. 30 in 10-CV-4757). Plaintiff submitted a consolidated sur-reply on the master docket. (See Doc. No. 24 in 11-CV-1315).

  Although counsel for some plaintiffs have filed consolidated briefs regarding the CCPO's motions to dismiss, the Court has determined that these motions should be addressed on a case-by-case basis. Thus, following the issuance of this Opinion, the Court will issue Orders and/or Opinions consistent with this Opinion addressing the CCPO's motions to dismiss in the consolidated cases.

because it was not acting within its prosecutorial role when it trained and supervised the Police Officers.

## II.     LEGAL STANDARD

The CCPO moves to dismiss pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim.  A motion to dismiss based on state sovereign immunity is appropriate under both Rule 12(b)(1) and Rule 12(b)(6).  See Carter v. City of Philadelphia, 181 F.3d 339, 343 (3d Cir. 1999) (considering immunity under 12(b)(6)); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996) (considering immunity under 12(b)(1)).  Motions under Rule 12(b)(1) may be "facial" or "factual" challenges to the court's jurisdiction.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  In reviewing a facial challenge, the court must dismiss a plaintiff's claims if "the allegations on the face of the complaint, taken as true, [do not] allege facts sufficient to invoke [its] jurisdiction."  Licata v. U.S. Postal Serv., 33 F.3d 259, 260 (3d Cir. 1994).  If the moving party makes a factual challenge to the court's jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations" and the court may consider and weigh evidence outside of the pleadings.  Med. Soc'y of N.J. v. Herr, 191 F. Supp. 2d 574, 578 (D.N.J. 2002).  When the moving party supports its motion with evidence, "the court should treat the . . . challenge as a factual attack on jurisdiction."  Mortensen, 549 F.2d at 891.  Although a plaintiff generally bears the burden of proving that the court has jurisdiction to hear the plaintiff's claims, id., the party asserting Eleventh Amendment immunity has the "burden of production and persuasion," Druz v. Noto, No. 09-5040, 2010 U.S. Dist. LEXIS 53348, at *14 (D.N.J. May 28, 2010).

Here, the CCPO submits evidence in support of its motion to dismiss based on the Eleventh Amendment.[3] Thus, the Court construes the CCPO's motion as a factual challenge under Rule 12(b)(1).

### III. DISCUSSION

#### A. Eleventh Amendment Sovereign Immunity

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment "by its terms does not bar suits against a State by its own citizens, [the Supreme] Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662-63 (1974), overruled on other grounds, Will v. Mich. Dep't. of State Police, 491 U.S. 58, 109 (1989). Thus, "'neither a State nor its officials acting in their official capacities' may be sued for monetary relief under § 1983" unless the State has waived its Eleventh Amendment immunity. Hyatt v. County of Passaic, 340 F. App'x. 833, 836 (3d Cir. 2009) (quoting Will, 491 U.S. at 71). Similarly, neither a State nor its officials acting in their official capacities are subject to suit in federal court for state-law claims unless the State has waived Eleventh Amendment immunity. Beightler v. New Jersey, No. 08-0966, 2008 U.S. Dist. LEXIS 102154, at *6-9 (D.N.J. Dec. 16, 2008); see Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 540-43 (2002).

---

[3] The CCPO submits authenticated copies of correspondence from the State Attorney General's Office. (See Doc. No. 30 in 10-CV-4757, Cert. of Matthew J. Behr, Ex. A). Although the CCPO first submitted that evidence as an attachment to its reply brief, the Court granted Plaintiff leave to file a sur-reply regarding CCPO's motion to dismiss. Thus, because both parties had a fair opportunity to submit evidence, it is appropriate to construe the CCPO's motion to dismiss as a factual challenge to the Court's jurisdiction.

"The breadth of state sovereign immunity protects not only states, but expands to protect entities and persons who can show that, even though the State is not the named defendant, 'the [S]tate is the real, substantial party in interest.'" Bennett v. Atl. City, 288 F. Supp. 2d 675, 679 (D.N.J. 2003) (quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945), overruled on other grounds, Lapides v. Bd. of Regents, 535 U.S. 613 (2002)). In Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655 (3d Cir. 1989), the Third Circuit held that the State is the real party-in-interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." Id. at 659 (quotations omitted). The Third Circuit established a three-factor test to determine whether the State is the real party in interest: (1) whether payment of a judgment resulting from the suit would come from the State treasury; (2) the status of the entity under state law, and (3) the entity's degree of autonomy. Id. "All three factors are given 'equal consideration, and how heavily each factor ultimately weighs in [the court's] analysis depends on the facts of the given case.'" Druz, 2010 U.S. Dist. LEXIS 53348, at *14 (quoting Cooper v. Southeastern Pa. Transp. Auth., 548 F.3d 296, 302 (3d Cir. 2008)). Applying the Fitchik factors, the Court finds that the CCPO is entitled to sovereign immunity regarding Plaintiff's claims.

### 1. Whether the State would be Liable for a Judgment against the CCPO

The "central goal" of the Eleventh Amendment is "the prevention of federal court judgments that must be paid out of the state's treasury." Fitchik, 873 F.2d at 659-60. Thus, under the first Fitchik factor, the Court must determine whether the State will ultimately absorb financial responsibility for any judgment in the case. See id. at 659-60 (explaining that the first factor is "whether the money that would pay the judgment would come from the state (this

7

includes . . . whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts"). The first Fitchik factor is satisfied if the State has "obligated itself to pay the [defendant's] debts." Id. at 662.

The New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1, et seq., ("TCA"), controls the State's liability for the conduct of public officials.[4] See Chasin, 732 A.2d at 461 ("The TCA . . . provides the unified scheme under which the Attorney General's duty to defend and indemnify employees must be evaluated."). Pursuant to the TCA:

> Except as provided [in N.J. Stat. Ann. § 59:10A-2], the Attorney General shall, upon a request of an employee or former employee of the State, provide for the defense of any action brought against such State employee or former State employee on account of an act or omission in the scope of his employment.

---

[4] By its express terms, the TCA controls the State's liability for the tortious conduct of public officials. See Wright v. State, 778 A.2d 443, 456-57 (N.J. 2001) (applying the TCA to determine whether the State was liable for tort claims brought against a county prosecutor's office). Courts have interpreted the TCA to also govern the State's liability under § 1983for the violation of federal civil rights by public officials. See Hyatt, 340 F. App'x. at 836 (applying cases interpreting the TCA to a § 1983 claim against a county prosecutor's office); Kelley v. Edison Twp., 377 F. Supp. 2d 478, 483 (D.N.J. 2005) (noting that the TCA applies to "federal claims as well"). Although the Court has not found any precedent explicitly holding that the TCA applies to the State's liabilities for violations of state civil rights under the New Jersey Civil Rights Act ("NJ CRA"), the Court predicts that the New Jersey Supreme Court would so hold for several reasons. First, the New Jersey Supreme Court has described the TCA as "the unified scheme under which the Attorney General's duty to defend and indemnify employees must be evaluated." See Chasin v. Montclair State Univ., 732 A.2d 457, 461 (N.J. 1999). Second, although the New Jersey Supreme Court has not expressly addressed the issue, in Wright, the Supreme Court held that the TCA applied to a plaintiff's civil rights claim against an arresting officer for excessive force. Wright, 778 A.2d at 448, 450 ("this case is governed by the TCA"). Third, New Jersey Courts have applied the TCA's immunity provisions to claims under the NJ CRA. See B.F. v. Div. of Youth & Family Servs., 686 A.2d 1249, 1256-57 (N.J. Super. Ct. App. Div. 1997) ("Plaintiffs contend that they are entitled to damages for violation of their state constitutional rights. . . . This aspect of the litigation is governed by the New Jersey Tort Claims Act."). But see Owens v. Feigin, 947 A.2d 653 (N.J. 2008) (holding that the TCA's notice-of-claim requirements do not apply to claims under the NJ CRA). Fourth, New Jersey courts recognize that the NJ CRA is the New Jersey equivalent of § 1983, see Rezem Family Assocs., LP v. Borough of Millstone, A-2290-09T2, 2011 N.J. Super. LEXIS 64, at *14-16 (N.J. Super. Ct. App. Div. Apr. 15, 2011) (explaining that the NJ CRA was modeled after § 1983); K.J. v. Div. of Youth & Family Servs., 363 F. Supp. 2d 728, 746 (D.N.J. 2005) (same), and, as noted above, courts apply the TCA's indemnification provisions to § 1983 claims. Thus, this Court interprets the TCA to govern the State's liability regarding: (1) common law torts; (2) violations of civil rights protected under federal law and redressable under § 1983; and (3) violations of civil rights protected under state law and redressable under the NJ CRA.

N.J. Stat. Ann. § 59:10A-1.  N.J. Stat. Ann. § 59:10A-2 provides that the Attorney General "may refuse to provide a defense" for a state employee under N.J. Stat. Ann. § 59:10A-1 "if he determines that:"

> a. the act or omission was not within the scope of employment; or
>
> b. the act or failure to act was because of actual fraud, willful misconduct or actual malice; . . .
>
> . . . .

County prosecutors are formally employed by their respective Counties and not the State. See Edison v. Hyland, 383 A.2d 714, 716 (N.J. Super. Ct. App. Div. 1978).  However, in Wright the New Jersey Supreme Court considered whether the State was required to indemnify and defend a county prosecutor's office pursuant to the TCA even though the county prosecutor was not a state employee.  Wright, 778 A.2d at 448, 456, 463.  The New Jersey Supreme Court rejected prior precedent holding that the State was liable only if a state employee committed the alleged misconduct.  Id. at 463 (rejecting the analysis in Michaels v. New Jersey, 968 F. Supp. 230 (D.N.J. 1997), aff'd, 150 F.3d 257 (3d Cir. 1998)).  Instead, the Supreme Court held that the proper inquiry was "whether the function that the county prosecutors and their subordinates were performing during the alleged wrongdoing is a function that traditionally has been understood to be a State function and subject to State supervision in its execution." Id.

Applying that standard, the New Jersey Supreme Court held that county prosecutors act as agents for both the State and their corresponding Counties.  Id. at 460-61.  The Court concluded that because law enforcement is traditionally the "business of the State," county prosecutors act as agents of the State when they engage in traditional law enforcement activities. Id. at 463.  "On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether

9

to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office." Id. at 461 (quoting Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996)). Thus, the New Jersey Supreme Court held that the State is responsible under the TCA for liabilities incurred by prosecutors "in the discharge of their law enforcement duties," but the State is not liable for a prosecutor's conduct regarding administrative and personnel decisions. Id. at 464; see Burke v. Monmouth Cnty. Prosecutor's Office, No. 10-4796, 2011 U.S. Dist. LEXIS 42404, at *6-7 (D.N.J. Apr. 19, 2011) (finding that State would be liable for claims based on county prosecutor's alleged misconduct in "presenting the charges against Plaintiff to the Grand Jury and then prosecuting the case through to trial"); Paez v. Lynch, No. 07-5036, 2009 U.S. Dist. LEXIS 119342, at *8-11 (D.N.J. Dec. 23, 2009) (finding that the State is liable for liabilities arising from traditional law enforcement activities); Fletcher v. Camden County Prosecutor's Office, A-0385-09T1, 2010 N.J. Super. Unpub. LEXIS 2592, at *15-18 (N.J. Super. Ct. App. Div. Oct. 27, 2010) (dismissing claims against county prosecutor's office based on its investigation and prosecution of a crime); Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996) (holding that the State is not liable for employment discrimination claim against prosecutor's office).

Here, the first Fitchik factor is satisfied because: (1) the Attorney General has in fact indemnified the CCPO for any judgment in this case; and (2) the training and supervision of the Police Officers qualifies as a prosecutorial function under Wright.

### 1. The Attorney General has Indemnified the CCPO

Plaintiff asserts that sovereign immunity does not apply because the Attorney General will not indemnify the CCPO pursuant to the TCA. According to Plaintiff, the Attorney General will not indemnify the CCPO because the training and supervision of police officers are not

"prosecutorial" functions. Plaintiff also argues that the Attorney General will decline to indemnify the CCOP pursuant to N.J. Stat. Ann. § 59:10A-1 because the CCPO engaged in willful misconduct. However, the Attorney General has in fact determined that it will indemnify the CCPO pursuant to the TCA.[5] Thus, the first Fitchik factor is satisfied because the State has "obligated itself to pay the [defendant's] debts." Fitchik, 873 F.2d at 662.

Moreover, Plaintiff does not have standing to challenge the Attorney General's decision to indemnify the CCPO. The TCA delegates to the Attorney General the authority to determine whether the State will indemnify a public official. See N.J. Stat. Ann. § 59:10A-2; Prado v. State, 895 A.2d 1154, 1162-63 (N.J. 2006); see generally Kelley, 377 F. Supp. 2d at 482-84 (describing the administrative process for determining whether the State will indemnify a public official). Although the Attorney General "may refuse to provide for the defense of an action" if the official acted willfully or maliciously, the TCA expressly authorizes the Attorney General to determine whether that exception applies. See N.J. Stat. Ann. § 59:10A-2 ("The Attorney General may refuse to provide for the defense of an action . . . if he determines that . . . the act or the failure to act was because of . . . willful misconduct or actual malice") (emphasis added); see Prado, 895 A.2d at 1162-63 (holding that the Attorney General has the authority to deny indemnification and representation under certain statutorily-defined conditions). The TCA also

---

[5] The CCPO represents to the Court that "[t]he State of New Jersey. . . has agreed to provide a defense and indemnify the Prosecutor's Office." (Def.'s Reply Br. at 3). The CCPO also represents to the Court: "As the Prosecutor's Office is served, the Prosecutor's Office informs the State of New Jersey which is providing a defense to the Prosecutor's Office and then the State of New Jersey provides the assignment on a case by case basis to this counsel." (Id. at 1 n.3). Although the unfortunate wording and grammar of that sentence create some ambiguities, the Court understands the CCPO to represent that it has requested indemnification and representation pursuant to N.J. Stat. Ann § 59:10A-1, and that the Attorney General has granted those requests and retained outside counsel to represent the CCPO. The New Jersey Supreme Court has held that the State's obligations to defend and indemnify under N.J. Stat. Ann. § 59:10A-1 are "wedded together." Wright, 778 A.2d at 444-45. That is, the State must "indemnify employees for whom a defense is provided." Id. at 444 (citing N.J. Stat. Ann. § 59:10A-1). Thus, because the State has accepted responsibility for defending the CCPO in this case, the State must also accept liability for any resulting judgment. See id. at 444-45 (explaining that this requirement is sound because "[t]he purpose of furnishing a state employee with a legal defense is to avoid the entry of a damages award in the first instance.") (internal quotation and citations omitted).

includes a "residual" indemnification provision that authorizes the Attorney General to indemnify a State agent "[i]n any other action or proceeding, including criminal proceedings," if the Attorney General "concludes that such representation is in the best interest of the State." N.J. Stat. Ann. § 59:10A-3. Significantly, the Attorney General's decision to indemnify a State agent is a "final administrative decision" subject to deferential judicial review. See Prado, 895 A.2d at 1160, 1162-63 (holding that a determination by the Attorney General to indemnify a State agent "is entitled to the usual deference accorded to [a final administrative] decision," and therefore "[a]n appellate court should not reverse the Attorney General's determination unless 'it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole'") (quoting In re Taylor, 731 A.2d 35, 42 (1999)); see also State Health Planning & Coordinating Council v. Hyland, 391 A.2d 1247, 1249-50 (N.J. Super. Ct. App. Div. 1978) (accepting that Attorney General's denial of representation was a "final decision of a state officer").

Although Plaintiff argues that the Attorney General should not indemnify the CCPO, Plaintiff does not have standing to challenge the Attorney General's final administrative determination. The Third Circuit has articulated three requirements for standing under Article III:

> (1) the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 484-85 (3d Cir. 1998) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); accord Soc'y Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175-76 (3d Cir. 2000). The touchstone for constitutional standing is actual injury. See Warth v. Seldin, 422 U.S. 490, 502 (1975). Here, Plaintiff's only injury as a result of the Attorney General's decision is that his claims against the CCPO may be barred under the Eleventh Amendment. However, Plaintiff does not have "a legally protected interest" in escaping the doctrine of sovereign immunity under the Eleventh Amendment. See generally Trump Hotels & Casino Resorts, Inc., 140 F.3d at 484-85 (stating that a plaintiff has standing to sue only if he suffers an "invasion" of a "legally protected interest"). Indeed, the TCA's indemnification provisions are intended to protect public officials who are sued for actions taken in the scope of their employment. See Chasin, 732 A.2d at 462-62 (discussing the purpose and history of the TCA's indemnification provisions). They are not intended to protect the plaintiffs who are suing those public officials. Thus, Plaintiff is not injured by the Attorney General's decision to indemnify the CCPO and therefore does not have standing to challenge that decision.[6]

---

[6] Even if Plaintiff had standing to challenge the Attorney General's determination, this Court would likely abstain from exercising jurisdiction to review that determination. In Burford v. Sun Oil Co., 319 U.S. 315 (1943), "the Supreme Court stated that a federal court should refuse to exercise its jurisdiction in a manner that would interfere with a state's efforts to regulate an area of law in which state interests predominate and in which adequate and timely state review of the regulatory scheme is available." Chiropractic Am. v. LaVecchia, 180 F.3d 99, 104 (3d Cir. 1999) (citing Burford, 319 U.S. at 332-34). Thus, a federal court should abstain from review of a state-agency decision:
> (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361 (1989). Here, New Jersey has a well-defined procedure for review of decisions by the Attorney General regarding indemnification, which includes direct review by the Superior Court. See N.J. Stat. Ann. § 59:1902 (describing procedures for challenging the Attorney General's determination); N.J. Court Rule 2:4-1 (providing that a party can appeal the Attorney General's decision to the Superior Court, Appellate Division); see generally Kelley, 377 F. Supp. 2d at 484 (describing procedures for review of Attorney General's indemnification decisions). A collateral review of the Attorney General's decision in this case would be disruptive of the State's efforts to establish a coherent policy

Because the Attorney General has indemnified the CCPO, the first Fitchik factor weighs in favor of finding that the CCPO is an arm of the State protected by the Eleventh Amendment.

### 2. The CCPO was Engaged in Prosecutorial Functions

Even if the Attorney General had not yet indemnified the CCPO, the CCPO is entitled to indemnification under the TCA because, contrary to Plaintiff's contentions, providing legal training and supervision of police officers is a prosecutorial rather than administrative function.

First, several cases interpreting Wright have concluded, that supervising and training police officers is a prosecutorial function. In Fletcher v. Camden County Prosecutor's Office, A-0385-09T1, 2010 N.J. Super. Unpub. LEXIS 2592 (N.J. Super. Ct. App. Div. Oct. 27, 2010), two police officers arrested two men whom the officers confused for known drug dealers. Id. at *6-11. After the men were released, they filed a complaint against the officers and the Camden County Prosecutor's Office, which supervised the officers' drug investigation. Id. at *14-15. The Plaintiff asserted claims against the prosecutor's office for: (1) failure to train and supervise the police officers; and (2) the "adoption of an official policy or custom that le[d] to constitutional violations." Id. at *15-16. The trial court granted summary judgment dismissing the claims against the prosecutor's office. Id. at *18. The Appellate Division affirmed. Id. The Appellate Division reasoned that supervising and training police officers were traditional "law enforcement and investigatory functions," and the prosecutor's office was therefore acting as an "agency of the [S]tate." Id. at *17-18.

Similarly, in Hyatt, the mother of a child witness in a sexual-assault case sued the Passaic County Prosecutor's Office because a detective for the prosecutor forced the child to testify notwithstanding that the mother withheld her consent. Hyatt, 340 F. App'x at 835. The plaintiff

---

regarding the State's indemnification of public officials because it would preempt review of that decision by the Superior Court.

asserted constitutional claims under § 1983 for failure to train and supervise the detective as well as state-law tort claims. Id. at 836. The district court granted summary judgment dismissing the claims against the Passaic County Prosecutor's Office because the Eleventh Amendment barred the claims. Id. at 836-38. The Third Circuit upheld that ruling. Id. at 836-37. In analyzing the first Fitchik factor, the Third Circuit found that "training and policy decisions that require legal knowledge and discretion are related to prosecutorial functions and are unlike administrative tasks concerning personnel." Id. Thus, applying the New Jersey Supreme Court's opinion in Wright, the Third Circuit concluded that "the State would be liable for any judgment" because the prosecutor's "procedures, policy, and training regarding sexually abused child witnesses required legal knowledge and discretion and therefore was related to [its] prosecutorial function." Id. at 837.

     Second, the holdings in Fletcher and Hyatt are buoyed by the United States Supreme Court's holding in Van de Kamp v. Goldstein, 129 S. Ct. 855 (2009). In Van de Kamp, the plaintiff alleged that the prosecutor failed to turn over exculpatory information to his attorney before his criminal trial. Id. at 859. The plaintiff was convicted at trial, but a court overturned the conviction because of the prosecutor's failure to provide the information. Id. The plaintiff sued the prosecutor's office under § 1983 for failure to train and supervise the employees who withheld the exculpatory information. Id. The plaintiff argued that prosecutorial immunity did not apply because training and supervising employees are administrative rather than prosecutorial functions. Id. at 861-62. The Supreme Court found that although training and supervision have an "administrative" aspect, id., "the administrative obligations at issue . . . are . . . unlike administrative duties concerning, for example, hiring, payroll administration, the maintenance of physical facilities, and the like," id. at 862. Rather, the Court found that "the

15

types of activities on which [the plaintiff's] claims focus necessarily require legal knowledge and the exercise of related discretion." Id. Thus, the Court held that those activities were prosecutorial in nature and prosecutorial immunity under § 1983 applied. Id.

Although Van de Kamp concerned the scope of prosecutorial immunity under § 1983 and not sovereign immunity under the Eleventh Amendment, the Supreme Court's analysis of training and supervision activities is persuasive and relevant to this Court's analysis under the first Fitchik factor in this case. As discussed above, under New Jersey law, the State is responsible for a county prosecutor's liabilities that arise out of prosecutorial rather than administrative activities. See Wright, 778 A.2d 464. Plaintiff's claims focus on the CCPO's failure to provide legal training and supervising for the Police Officers. Plaintiff's claims do not implicate administrative issues such as personnel decisions and facility maintenance. Plaintiff's claims center on the CCPO's legal knowledge and whether it exercised appropriate discretion in light of that knowledge. Thus, for the same reasons that the Supreme Court articulated in Van de Kamp, the Court finds that the alleged misconduct in this case concerns prosecutorial and not administrative activities.[7]

Consequently, the State would be required pursuant to N.J. Stat. Ann. § 59:10A-1 to indemnify the CCPO for any judgment in this case. The first Fitchik factor therefore weighs in favor of finding that the CCPO is an arm of the State protected by the Eleventh Amendment.

---

[7] Plaintiff cites various cases holding that prosecutors are not entitled to sovereign immunity under the Eleventh Amendment. (See Pl.'s Opp. Br. at 7-8) (citing Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir. 1999); Myers v. County of Orange, 157 F.3d 66 (2d Cir. 1998); Franklin v. Zaruba, 150 F.3d 682 (7th Cir. 1998); Esteves v. Brock, 106 F.3d 674 (5th Cir. 1997)). However, none of those cases involved county prosecutors in New Jersey. Indeed, in Carter, the principal case relied on by Plaintiff, the Third Circuit considered whether, under Pennsylvania law, the Philadelphia District Attorney's Office was an arm of the Commonwealth of Pennsylvania under the Fitchik factors. Carter, 181 F.3d at 346-355. Here, the Court must analyze whether the CCPO is an arm of the State of New Jersey under New Jersey law. Thus, the Court is guided by the Third Circuit's analysis in Hyatt, which granted immunity under the Eleventh Amendment to a New Jersey county prosecutor. See Hyatt, 340 F. App'x at 835.

## 2. The Status of the CCPO under New Jersey Law

The second Fitchik factor requires the Court to consider the status of the CCPO under New Jersey law. The focus of the second factor is "whether state law treats an agency as independent, or as a surrogate for the state." Fitchik, 873 F.2d at 662.

"The criminal business of the State" of New Jersey is "prosecuted by the Attorney General and the county prosecutors."[8]  N.J. Stat. Ann. § 2A:158-4. The Attorney General is New Jersey's "chief law enforcement officer." Coleman, 87 F.3d at 1501 (citing N.J. Stat. Ann. § 52:17B-4). Each county has a prosecutor who is "vested with the same powers and subject to the same penalties, within his county, as the attorney general shall by law be vested with or subject to . . . ." N.J. Stat. Ann. § 2A:158-5. Pursuant to N.J. Stat. Ann. § 52:17B-103:

> The Attorney General shall consult with and advise the several county prosecutors in matters relating to the duties of their office and shall maintain a general supervision over said county prosecutors with a view to obtaining effective and uniform enforcement of the criminal laws throughout the State. He may conduct periodic evaluations of each county prosecutor's office including audits of funds received and disbursed in the office of each county prosecutor.

See Coleman, 87 F.3d at 1501 (noting that the Attorney General is responsible for "the maintenance of an effective statewide law enforcement policy"). In addition to the Attorney General's broad supervisory role, the Attorney General may intervene in specific criminal matters of a County. Pursuant to N.J. Stat. Ann. § 52:17B-107:

> Whenever in the opinion of the Attorney General the interests of the State will be furthered by so doing, the Attorney General may (1) supersede a county prosecutor in any investigation, criminal

---

[8] The New Jersey Constitution establishes the offices of both the Attorney General and the county prosecutors. See N.J. Const. Art. V, § 4, ¶ 3 (Attorney General); N.J. Const. Art. VII, § 2, ¶ 1 (county prosecutors). However, the specific relationship between the Attorney General and the county prosecutors is governed by statute. See Coleman, 87 F.3d at 1500; Morss v. Forbes, 132 A.2d 1, 17 (N.J. 1957) ("constitutional provisions fail to furnish any guide or standard with respect to the nature of powers, rights, duties and responsibilities of either officer, and, consequently, the task of definition is left to the Legislature.").

> action or proceeding, (2) participate in any investigation, criminal action or proceeding, or (3) initiate any investigation, criminal action or proceeding. In such instances, the Attorney General may appear for the State in any court or tribunal for the purpose of conducting such investigations, criminal actions or proceedings as shall be necessary to promote and safeguard the public interests of the State and secure the enforcement of the laws of the State.

N.J. Stat. Ann. § 52:17B-107; see also N.J. Stat. Ann. § 52:17B-106 (authorizing the Governor, "a grand jury or the board of chosen freeholders of a county or the assignment judge of the superior court for the county" to request that the Attorney General exercise its supersedure powers ."). Additionally, if a county does not have a prosecutor, the Attorney General is required to prosecute criminal matters for the county. See N.J. Stat. Ann. § 52:17B-104.

In view of the above institutional structure, county prosecutors operate as agents of the State when they engage in law enforcement activities and act as agents of the county when they engage in administrative matters. See Wright, 778 A.2d at 460-61; Fletcher, 2010 N.J. Super. Unpub. LEXIS 2592 at *17 ("County prosecutors are considered agents of the State when they perform their law enforcement and investigatory functions."). As noted above, training and supervision of police officers regarding matters that requires legal expertise and discretion is a prosecutorial rather than administrative function. Thus, in the context of this case, where Plaintiff asserts claims against the CCPO for failure to supervise and train the Police Officers, the CCPO was acting as a surrogate for the State.

Moreover, in this case, the CCPO was acting pursuant to a directive from the Attorney General. In February 2003, the CCPO issued an Interim Report regarding the management and practices of the Camden City Police Department. (See Behr Cert., Ex. A, at 1). The report found that the "citizens of Camden" were exposed to "immediate risk of danger" "due to the mismanagement and disorganization with the police department." (Id.). Notwithstanding those

dangers, the CCPO did not intervene in the Police Department's management or supervision. (Id.) ("you declined to exercise your oversight authority as Prosecutor"). Consequently, the Attorney General exercised its supersedure powers and issued the following directive to the CCPO: "I direct that effective immediately, in your capacity as County Prosecutor and Monitor of the Camden Police Department, you supersede the management, administration and operation of the Camden Police Department." (Id. at 2). Pursuant to that directive, the CCPO continues to manage and supervise the Camden City Police Department. (Def.'s Reply Br., at 6).

Thus, the second Fitchik factor therefore weighs in favor of sovereign immunity under the Eleventh Amendment because the CCPO was acting as an agent of the State.

### 3. The CCPO's Degree of Autonomy

The third Fitchik factor overlaps to an extent with the second factor. As discussed above, the CCPO is a hybrid institution that operates independent of the State regarding administrative matters, but subject to the State's oversight and supersession powers regarding prosecutorial matters. See generally Wright, 778 A.2d at 460-61. Thus, when performing its prosecutorial function, a county prosecutor's office "is not autonomous from the state." Hyatt, 340 F. App'x at 837. Additionally, in this case, the Attorney General specifically superseded the CCPO's authority and ordered the CCPO to assume responsibility for supervising the Camden City Police Department. (Behr Cert., Ex. A). The third Fitchik factor therefore weighs in favor of sovereign immunity under the Eleventh Amendment. See id. (concluding that county prosecutor's office was immune from claims for failure to train and supervise because it was not autonomous from the State regarding its prosecutorial activities).

### 4. Balancing the Factors

In this case, all three Fitchik factors weigh in favor of granting the CCPO sovereign immunity under the Eleventh Amendment. Thus, the Court concludes that the CCPO is entitled to sovereign immunity under the Eleventh Amendment regarding Plaintiff's § 1983 and state-law tort claims against the CCPO. See Hyatt, 340 F. App'x at 837 (reaching same conclusion regarding failure to train and supervise claims against a New Jersey county prosecutor's office). Because Plaintiff fails to allege any facts sufficient to establish any other cognizable claim against the CCPO, the Court grants the CCPO's motion to dismiss the Complaint as against it.

### B. The CCPO's Remaining Arguments

The CCPO argues that Plaintiff's claims against it should also be dismissed because it is entitled to absolute prosecutorial immunity, the CCPO is not a "person" within the meaning of § 1983, and the Complaint fails to state a claim under § 1983. Because the Court finds that the CCPO is entitled to sovereign immunity under the Eleventh Amendment, and because sovereign immunity implicates the Court's jurisdiction over Plaintiff's claims, the Court refrains from addressing the merits of CCPO's other arguments. The Court also refrains from addressing whether the Camden County Prosecutor can be sued in his individual capacity in related cases.[9]

## IV. CONCLUSION

For the reasons discussed above, the Court grants the CCPO's motion to dismiss Plaintiff's claims against it. An appropriate Order shall be entered.

Dated: 8/18/2011                                            /s/ Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge

---

[9] Plaintiff in this case does not sue the Camden County Prosecutor in his individual capacity.